# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **AMBER DOWDY, et al,,**<br><br>　　　　　　　　**Plaintiffs,**<br><br>vs.<br><br>**THE COLEMAN COMPANY, INC.,**<br><br>　　　　　　　　**Defendant.** | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  1:11CV45DAK<br><br>Judge Dale A. Kimball |

　　　　This matter is before the court on Plaintiffs' Motion in Limine, which raises ten issues, Defendant's nine remaining motions in limine,[1] Plaintiffs' Response and Objections to Coleman's Pretrial Disclosures, Coleman's Objections to Plaintiffs' Proposed Witness List, Coleman's Objections to Plaintiffs' Amended Exhibit List, Coleman's Objections to Plaintiffs' Proposed Deposition Designations, and Plaintiffs' Objections to Coleman's Deposition Designations and Counter Designations.  On November 27, 2012, the court held a hearing on the motions in limine.  At the hearing, Plaintiffs were represented by Mark N. Stageberg, D. David Lambert, and Jackson Howard, and Defendant was represented by Kenneth R. Lang and John R. Lund.  After hearing oral argument, the court took the motions and objections under advisement.  The court has carefully considered the memoranda and exhibits submitted by the parties, as well as the law and facts relevant to the motions and objections.  Now being fully advised, the court renders the following Memorandum Decision and Order.

---

　　　　[1] Coleman filed a motion in limine to exclude discovery disputes and a motion in limine to exclude gruesome photographs, both of which the parties resolved through stipulations.

A. **MOTIONS IN LIMINE**

1. **Plaintiffs' Motion to Preclude Evidence of Alcohol Consumption by Decedent Steven Dowdy**:

Plaintiffs argue that the court should exclude all testimony regarding alcohol consumption by Dowdy either before or on the evening of the incident in questions because the medical examiner found no level of blood alcohol in Dowdy. Plaintiff asserts that Defendant has no expert witness to testify that alcohol contributed to this incident and any evidence of alcohol consumption would be irrelevant under Rule 401, lacking in foundation, and prejudicial under Rule 403.

Coleman contends that the evidence is relevant to its contributory/comparative negligence defense against Plaintiffs' negligence and strict liability claim. Coleman states that despite the lack of blood alcohol found by the medical examiner, there is deposition testimony from witnesses that Dowdy was drinking alcohol that night. Coleman also points out that the medical examiner acknowledged that the finding of no blood alcohol is not inconsistent with testimony that Dowdy was drinking before going to bed. Based on the deposition testimony, Coleman argues that the jury should be allowed to hear that Dowdy was up late drinking with friends before he decided to take the heater into the tent because such evidence is relevant to his decision-making abilities at the time. Coleman further claims that the evidence is relevant to Dowdy's alleged misuse of the product and taking actions contrary to the warnings.

Plaintiffs motion is DENIED. The evidence of drinking on the night in question is relevant to Dowdy's decision making on that night and its potential impact on his actions. The witnesses may be asked questions as to whether they saw Dowdy drinking and if they knew how much he consumed. Defendant, however, cannot make blanket statements regarding Dowdy's drinking in their opening statement. Any statement by Defendant in openings must be tied to a specific amount of drinking from deposition testimony that Defendant anticipates will be testified to at trial. Plaintiffs can counter such evidence with evidence that no blood alcohol was found by the medical examiner. The court does not find

the evidence more prejudicial than probative.

**2. Plaintiffs' Motion to Exclude Evidence of Alcohol Consumption By Others at Campsite:**

Plaintiff argues that evidence of alcohol consumption by others is irrelevant to the issues in the case and may have a prejudicial effect on some jurors. Plaintiff contends that if there is no admissible evidence that alcohol played a role in the deaths of Dowdy and Thomlinson, the fact that other campers nearby may have consumed alcohol is irrelevant under Rule 401 and prejudicial under Rule 403.

Coleman, however, asserts that the evidence from witnesses is that Dowdy was drinking with several friends throughout the evening and such evidence allows the jury to understanding the general disposition of the campsite on the evening before the incident. This general background will assist the jury in understanding the campground set up, the timing of events, and Dowdy's actions and decisions that evening.

Plaintiff's motion is DENIED. The evidence can be briefly discussed as background information for the jury to understand the timing of events and the general nature of the campsite on the evening of the incident. The evidence is not more prejudicial than probative.

**3. Plaintiffs' Motion to Exclude Carbon Monoxide Opinions:**

Plaintiffs ask the court to exclude testimony of any kind, including opinions by any lay or expert witness as to their personal experience with carbon monoxide, their use of similar propane radiant heaters, and their opinions as to the danger of using these types of heaters. Plaintiffs acknowledge that each person may have an opinion on the dangers of carbon monoxide and whether it was safe or negligent for the decedents to have taken a propane heater into their tent, such evidence is irrelevant. But, Plaintiffs contend that asking each witness in this case for their personal experiences with carbon monoxide and their opinions regarding the dangers of a propane heater amounts to an informal and unscientific opinion poll which is inadmissible unless established to have a reliable scientific basis.

Plaintiffs argue that all such evidence is irrelevant, without adequate foundation, and should be excluded under Rule 401 because only the decedents knowledge and experience is relevant. Other anecdotal evidence would be prejudicial and have a great potential to confuse the real issue--especially in the case of Dr. Radwin, who is a fact witness who happens to be a medical doctor. Plaintiff point out that such evidence will also unduly prolong each witness' testimony as it will require foundation to be laid and extensive cross examination.

Coleman agrees with the general proposition that lay witnesses should not be allowed to offer expert testimony, but it contends that lay witnesses can testify as to what they perceived the situation to be in the tent when the victims were found. Because that witness' background understanding of carbon monoxide and the propensity of fuel burning products to emit carbon monoxide when used in an enclosed tent is relevant to what that witness perceived in the tent and why certain steps were taken by those first on the scene, the evidence is relevant to the witnesses' perception of the incident, is helpful to the jury, and is not based on scientific, technical, or specialized knowledge.

Plaintiffs' motion is GRANTED. Witness testimony about their personal history with carbon monoxide and propane heaters is irrelevant and would unduly delay witness testimony. Witnesses who entered the decedents' tent and made certain observations can describe what they saw, as any lay witness would, without applying any personal background to interpret or elaborate on what they saw. Witnesses can say what they saw and how that impacted what they did. There is no need for evidence of what a general person's knowledge of carbon monoxide poisoning may be. The jury is utilized to provide a general person's knowledge. The court agrees that Dr. Radwin's opinions and statements to his children are inappropriate and could confuse or prejudice the jury. The issue is not what others knew about carbon monoxide, but what the decedents knew about carbon monoxide.

**4. Plaintiffs' Motion to Exclude Dowdy's Juvenile Offenses:**

Plaintiffs' motion is GRANTED. Dowdy's juvenile offenses are excluded under FRE 609(d), which prohibits juvenile adjudications, and FRE 609(b), which prohibits convictions over ten years old.

**5. Plaintiffs' Motion to Preclude Dowdy's Criminal Conviction:**

Plaintiffs argue that all evidence of a drug-related criminal conviction of Dowdy occurring when he was 19 or 20 should be excluded. Plaintiff asserts that under FRE 609(a)(1) there was not a sentence of more than one year and the circumstances do not satisfy FRE 609(a)(2) which applies to crimes involving a dishonest act or false statement. Coleman argues that if the court looks to the underlying facts of the conviction, as testified to by Dowdy's mother, the crime involved dishonesty. The court disagrees.

Plaintiffs' motion is GRANTED. Dowdy's prior conviction is irrelevant, old, and is not a crime of dishonesty.

**6.     Plaintiffs' Motion to Exclude Dowdy's Childhood ADHD:**

Plaintiffs seek an order excluding any reference to Dowdy's childhood ADHD. According to testimony from Dowdy's mother, Dowdy suffered childhood ADHD at the age of 5 and took Ritalin for four or five years. Plaintiffs assert that because there is no evidence that the condition continued into Dowdy's adult life or played any role in this incident, the evidence is irrelevant under FRE 401 and unduly prejudicial.

Coleman, however, argues that Dowdy's background is relevant to the case and anything informing the jury about his decision-making process that led him to misuse the heater and ignore numerous warnings is relevant. Coleman claims that no medical expert is necessary to link Dowdy's childhood ADHD to his later decisions.

Plaintiffs' motion is GRANTED. Dowdy's childhood ADHD is irrelevant to his decision making abilities as an adult. There is no basis for concluding that childhood ADHD would have any impact on an

adult's ability to read a warning, understand a warning, know about carbon monoxide poisoning, or make decisions. Expert medical testimony would be necessary to make any such link. The evidence is more prejudicial than probative.

**7.     Plaintiffs' Motion to Exclude Post-Incident Events:**

Plaintiffs argue that the court should exclude all testimony about events occurring to the heirs and families of the decedents after the date of this incident on June 21, 2009. Under Utah law, "damages for wrongful death are measured at the moment of death and that changed circumstances occurring after death but before trial are irrelevant." *Peterson v. Daimler Chrysler Corp.*, 2011 WL 2491052 (D. Utah). Accordingly, wrongful death damages sustained by the decedent's heirs and next of kin are based upon the conditions that existed as of the date of death.

Coleman does not dispute the principle of law from the *Peterson* case. However, Coleman asserts that Plaintiffs motion is overbroad in that it would exclude any mention of the heirs' pain and suffering as a result of the decedents' death, which would usually come in with respect to damages. If Plaintiffs seek such information at trial to establish damages, Coleman argues that it should be allowed to respond to such testimony.

Plaintiffs' motion is GRANTED. Generally, such matters are irrelevant. The court notes that neither party gives any specific event or interaction that is at issue. Therefore, some parameters on this type of evidence may need to be dealt with at the time of trial. However, if Plaintiffs put on evidence of post-incident pain and suffering, Coleman can respond with limited, relevant evidence that may specifically rebut such testimony.

**8.     Plaintiffs' Motion to Exclude Collateral Sources:**

Plaintiffs' motion is GRANTED. The parties agree that the court should exclude any mention of collateral sources such as life insurance or any other post-death benefits paid to Dowdy's wife, Amber, or

his daughter, Lexis, including social security payments and all similar post-death benefits available to survivors. The Supreme Court of Utah recently affirmed the prohibition of such evidence. *Wilson v. IHC Hospitals, Inc.*, 2012 WL 2947919 (Utah 2012).

**9. Plaintiffs' Motion to Exclude All Testimony of Late-Disclosed Witness Ruben Mateos Martin:**

Plaintiff asks the court to exclude Ruben Mateos Martin, Sales/Technical Manager of Copreci Group, as a witness because he was disclosed by Coleman on February 27, 2012, on their second supplemental Rule 26(a)(1) disclosures, which was long after the December 1, 2011 deadline for disclosure of expert reports and only four days before the end of discovery on March 1, 2012. The disclosure states that he possesses percipient knowledge and factual information relating to the material issues of design, manufacturer's intended use and performance characteristics of thermocouples, safety shut-off valves and oxygen depletion sensors." Plaintiff argues that the proposed subject matters of Martin's testimony are matters of expert testimony that were not timely disclosed. Plaintiffs claim that they had no opportunity to probe further into his proposed testimony before discovery ended.

Coleman, however, contends that Martin is a fact witness and that he was timely designated as such. Coleman asserts that Martin will testify as to the operating characteristics of thermocouples and ODS sensors and he will not opine on the safety of heaters or the design of the 5017 heater.

Plaintiffs' motion is DENIED. The court will allow Martin to testify as a fact witness. He is not allowed to give any opinion testimony. In addition, given how close to the fact discovery cutoff Martin was disclosed, Plaintiffs have leave of court to depose him prior to his appearance at trial. Coleman shall help facilitate such deposition.

**10. Plaintiffs' Motion to Exclude Evidence of Canadian Gas Association's Purported Certification:**

Plaintiff seeks to exclude any evidence of a purported certification of the propane heater in question by the Canadian Gas Association ("CGA"). The documents produced in discovery are listed as

Exhibits 4, 6, and 7 in Coleman's pretrial disclosures. The documents on their face make it clear that they are not governmental standards. Utah's Products Liability Act, Utah Code Ann. § 78B-6-703, makes clear that only governmental standards are evidentiary in regard to proof of defect or lack thereof.

Plaintiffs argue that the CGA certification is inadmissible because: (1) it is not based on governmental standards as required by Utah statute; (2) the Utah statute does not contain any language authorizing the use of voluntary standards of any organization, no matter how reputable, to prove that the product is not defective; (3) Coleman has not provided the foundation documents establishing the bona fides of the organization which purportedly certified the heater nor has Coleman provided the testing data that was purportedly used to certify the heater; (4) the CGA is a foreign trade organization for entities involved in natural gas transmission, distribution, and equipment manufacturers with no standing in the United States; (5) case law makes clear that evidence of compliance with industry standards is not relevant in a strict liability product defect case and only has potential admissibility in a negligence case; (6) certification goes to the ultimate issue to be determined–whether the product is defective–and thus invades the province of the jury; (7) the documents are inadmissible hearsay because Coleman has not included in its disclosures any person associated with the CGA who could lay a foundation for the documents' admission; and (8) the documents make clear that the Coleman heater failed the testing that was performed.

Coleman, however, does not contend that this is a government standard or that it is entitled to the statutory presumption. Rather, Coleman asserts that it is admissible of evidence of industry standards which are generally admissible in a products liability case. Coleman claims that it can lay a foundation for the documents by an ex-employee of the CPSC, who will establish the document as a business record and provide sufficient foundation to allow admissibility.

Plaintiffs' motion is PROVISIONALLY GRANTED. The court questions whether a former

CPSC employee can provide adequate foundation for a CGA standard or certification process. Although there may be some limited relevance of a CGA certification to an industry-wide standard, Coleman has not demonstrated how a Canadian association's standards are relevant when there are American standards that are directly applicable. However, the court does not completely foreclose Coleman's ability to try and further establish foundation and relevance for the certification at trial.

11. **Coleman's Motion to Exclude Evidence of Corporate Status, Foreign Citizenship, Ownership Structure, Wealth, Size, and Income**

Coleman argues that evidence of wealth and financial condition is admissible "only after a finding of liability for punitive damages has been made." Utah Code Ann. § 78B-8-201. Until such time, the parties agree that evidence of financial status is irrelevant and prejudicial.

Plaintiffs, however, contend that during the course of evidence and argument it will be very restricting to prohibit evidence or mention of the size of the Coleman Company as a leader in camping equipment. They also contend that the size of Coleman can be relevant to certain issues. Coleman points out that it is not a leader in the design and sale of propane heaters because it stopped manufacturing propane heaters in 2007.

Coleman's motion is GRANTED IN PART and DENIED IN PART. Plaintiff agrees not to mention wealth and financial status until there is a jury finding of liability for punitive damages. The court, however, finds no harm in Plaintiffs referring to Coleman as a leader in camping equipment because it clearly is identified as such to most consumers. There is no basis for referring to Coleman as a leader in propane heaters because it no longer sells such heaters. The court further finds no constitutional concerns regarding evidence of financial status if the case reaches the punitive damages phase. Coleman reads the *State Farm* case too broadly and fails to recognize the nexus between out-of-state decisions and the potential impacts of those decisions in the State of Utah.

**12. Coleman's Motion to Exclude Evidence of Other Coleman Heaters and Propane Products**

Coleman asks the court to exclude evidence of other Coleman heaters and propane products. Coleman argues that the relevant issue in this case is whether Coleman failed to make Powermate Heater Model 5017 reasonably safe in design and whether adequate warnings were provided. In making that decision, Coleman contends that evidence of other Coleman heaters is irrelevant. Coleman also asks the court to exclude evidence of Coleman non-heater propane-burning appliances because stoves and lanterns are designed and function differently. Even if such appliances were relevant, Coleman claims that their limited probative value is outweighed by the potential to confuse the issues and mislead the jury.

Plaintiffs assert that this motion rehashes the arguments already decided by the court in its September 12, 2102 Memorandum Decision and Order and the primary issue of the motion in limine has been decided. The court already said that there is evidence that other Coleman heaters are substantially similar. How they may differ and the significance of those difference can be explored on cross examination. Plaintiffs also argue that evidence of Coleman's other non-heater products is relevant because photographs showing a specific carbon monoxide warning on larger products and stoves shows that Coleman recognized the risk. Plaintiffs contend that it is for the jury to decide if it was negligence for Coleman not to put the same warning on its smaller products.

Coleman's motion is GRANTED IN PART and DENIED IN PART. The court has already decided that Coleman's other propane heaters are substantially similar enough to be admissible. Coleman can explore the significance of any differences on cross examination. There is no evidence that the other types of equipment utilizing propane, such as lanterns and stoves, are substantially similar. Therefore, the court finds that such products are not relevant.

**13. Coleman's Motion to Exclude Evidence from the Consumer Product Safety Commission**

Coleman seeks to exclude evidence from the CPSC. Plaintiffs' CPSC exhibits fall within 4

general categories: (1) CPSC's investigation of the Focus 5 and Focus 10 heaters; (2) CPSC's preliminary inquiry of the Powermate Model 5014; (3) CPSC meeting logs, summarizing meetings with portable camping equipment manufacturers; and (4) CPSC's staff members' incident and warnings analyses/summaries.

      Coleman argues that none of the documents reference the subject model heater and they are not relevant to prove that the subject heater contained a design or warnings defect. Even if the evidence regarding these other heaters is marginally relevant, Coleman asserts that it is outweighed by the potential that the evidence suggests that the subject Powermate heater contains a defect simply because the CPSC investigated Coleman's smaller propane heaters. Also, Coleman asserts that the preliminary inquiry into the 5014 model was done four years after the subject heater in this case was manufactured, the mere inquiry into a product is not evidence of a defect, admitting evidence on the inquiry could confuse the jury and be unfairly prejudicial, and the documents contain hearsay. Coleman next asserts that the CPSC meeting logs are irrelevant because someone's summary of industry-wide meetings regarding issues being addressed by camping appliance manufacturers years after the date that the subject heater was manufactured and sold has no bearing on whether the subject heater is defective. Coleman claims that the admission of the exhibits would also cause undue delay and waste time. Furthermore, Coleman contends that CPSC summaries of incidents associated with gas camping equipment and warning issues are irrelevant. These summaries deal with portable camping heaters unlike the subject heater which is an industrial heater.

      By federal regulation, employees of the CPSC are not required to provide testimony in civil litigation. 16 C.F.R. § 1016.4. The CPSC is authorized to provide certified copies of documents in its possession for use in civil litigation. *Id.* The CPSC has already certified all of Plaintiffs exhibits. The admissibility of certified copies of official records is controlled by FRCP 44. Several courts have

admitted such documents as public records under FRE 803(8). *United States v. Midwest Fireworks Mfg. Co.*, 248 F.3d 563, 566 (6th Cir. 2001). Another court has admitted them under the public records exception and also under FRE 703 as a basis for the expert's opinions. *Wieglus v. Ryobi Technologies,* Case No. 08cv1597 (N. Ill. August 21, 2012).

Coleman's motion is DENIED. The documents are public records under FRE 803(8) and are admissible as a basis for Plaintiffs' experts' opinions. The documents are relevant to notice, tank valve control, and proper warnings. To the extent that Coleman asserts the documents contain hearsay, it can address such issues on cross examination.

**14. Coleman's Motion to Exclude Other Incident Evidence**

Coleman seeks to exclude other incident evidence, claiming that Plaintiffs cannot show that the other incidents involved the same or substantially similar product, substantially similar circumstances, and substantially similar defect allegations. Coleman contends that the admission of other incident evidence would force it to defend itself against the vague, incomplete, and unreliable hearsay allegations of each of the other incidents reported. In other cases against Coleman, Plaintiffs' counsel has tried to rely on CPSC Epidemiological Incident Reports (EIRs) that themselves include police investigation reports, sheriff's officer reports, coroner reports, and other similar documents. Coleman claims that this evidence is not admissible under the business records exception because CPSC reports are untrustworthy in that they contain hearsay within hearsay.

Coleman also specifically wants excluded a summary prepared by its outside counsel regarding information related to other alleged incidents. Coleman claims that this summary is not a business record, is not an admission of defect or admission against interest, and shows only that Coleman's lawyers had information that injuries and deaths involving Coleman heaters had occurred. Coleman argues that these other incidents will waste time and delay trial because Coleman does not dispute that it had knowledge of

these other incidents. Therefore, evidence of the same is irrelevant and unnecessary.

Coleman's motion is DENIED. The evidence is relevant to Plaintiffs' theory of the case, notice, defective design, expert opinion, and punitive damages. Although Coleman does not dispute that it had notice, it does not appear to be entering into a stipulation of such notice. Coleman employees have made the summary themselves as a business record. The court has already decided that the other incidents are substantially similar enough to be admitted for purposes of Coleman's notice that such events were occurring and that there may have been problems with its products. The jury will be instructed at trial that these other incidents are not being introduced to prove the facts of this case and that they should consider the other incidents for the purpose of determining whether Coleman had notice of potential design defects in its products. Given this instruction, Coleman need not try to defend itself on the facts of each incident and the trial will not be unduly prolonged. Accordingly, the court finds no basis for revisiting its prior ruling at the summary judgment phase.

**15.     Coleman's Motion to Bar Inflammatory and Prejudicial Language At Trial And/Or Personal Attacks on Defense Counsel.**

The parties agree to follow the applicable rules of civility and professional conduct. The remaining issue with respect to this motion is whether the use of the word "kills" should be precluded. Coleman asserts that stating a heater "killed" a person is inflammatory. In various pleadings and memoranda in this case Plaintiffs' counsel refers to Coleman's products as "killing" the user of the product, such as: "The Focus 30 heaters have killed six people and injured 5 others"; "They certainly did not expect that the heater would kill them"; "The heaters of none of these other manufacturers kill people like the Coleman heaters." Furthermore, in a previous trial, Plaintiffs' counsel argued that Coleman "created death machines."

Plaintiffs assert that the court can control its courtroom, but recognize that it is an unusual motion

that asks the court to control the conduct of counsel. Plaintiffs do not believe that they should be required to sugar coat how Coleman heaters cause death in what is essentially a wrongful death action.

Coleman's motion is GRANTED IN PART and DENIED IN PART. It is Plaintiffs' position that the heaters caused the deaths of Dowdy and Thomlinson. There are many ways to phrase that contention without being pejorative. Use of the words "kill" or "killed" sparingly is not overly inflammatory. The court has no problem with a statement similar to "They did not expect that the heater would kill them." However, Plaintiffs are cautioned not to go overboard; use of the term "death machines" is inflammatory and should not be used in front of the jury.

### 16. Coleman's Motion in Limine Regarding Plaintiffs' Spoliation of Evidence

Coleman's motion seeks an order excluding and otherwise prohibiting Plaintiffs from seeking certain favorable evidentiary inferences because the tent in question was burned on the afternoon after the decedents were discovered. At the hearing, the parties appeared to have reached agreement that the Thomlinsons did not intentionally destroy the tent to gain an advantage in litigation. The tent appears to have been destroyed as part of the grieving process with no regard to legal issues. Plaintiffs agree not to suggest that the warnings were not present or that warnings could not be seen on the tent due to age or fading. Plaintiffs agree that the warnings on the tent could be viewed the same as warnings on a new tent of the same model could be viewed. Accordingly, Coleman's motion is GRANTED IN PART and DENIED IN PART.

### 17. Coleman's Motion to Bifurcate the Trial

Coleman seeks an order bifurcating the liability and compensatory damages phases from any punitive damages phase of trial. FRCP 42(b) allows for separate trials "for convenience, to avoid prejudice, or to expedite and economize." The rule further allows the court to order a separate trial of "one or more separate issues [or] claims." Coleman argues that bifurcating the punitive damages phase is

not uncommon in the Tenth Circuit, liability and punitive damages are separable issues because they require different testimony and burdens of proof, and bifurcation is necessary to avoid prejudice to Coleman.

Plaintiffs oppose bifurcation and point out that juries are frequently asked to decide different causes of action under different evidentiary standards. Plaintiffs assert that a lot of evidence relevant to proving a defect is also relevant to punitive damages. Plaintiffs acknowledge that the amount of punitive damages must be considered in a separate phase if liability on punitive damages is found.

Coleman's motion is DENIED. The majority of the evidence as to whether punitive damages are appropriate can be given during the main part of the trial because some of that evidence overlaps with other issues in the trial. Because of such overlap, judicial economy is furthered by trying all the issues together. The parties agree that the amount of punitive damages, if necessary, has to be bifurcated under Utah law. The court, therefore, will ask whether the jury believes Plaintiffs have demonstrated that punitive damages are appropriate. If the jury states that it is appropriate to award punitive damages in this case, the court will bring the jury back in the courtroom for evidence on wealth and financial status. The court finds that no other bifurcation is necessary.

18. **Coleman's Motion for Rule 104 Hearing Re: Opinions of Hutter and Engberg in Light of Recent Tenth Circuit Decision in *Hoffman v. Ford***

Coleman's motion is DENIED. Even though the decision in question was not cited in the court's September 12, 2012 Memorandum Decision and Order, the court considered the case in connection with that Order and ruled accordingly. The *Hoffman* case is factually distinguishable from the present case. The court also notes that, in the *Hoffman* case, the Tenth Circuit did not change established law and decided not to publish the decision. 2012 WL 3518997 (10th Cir. 2012) (unpublished). The court, therefore, finds that the case provides no basis for it to reconsider its prior order as to Plaintiffs' experts.

**19.     Coleman's Motion to Exclude Evidence of Other Manufacturer's Heaters**

Coleman seeks to preclude Plaintiffs from introducing evidence of other manufacturers' heaters containing oxygen depletion sensors ("ODS") and thermocouples located in front of their burners, which Plaintiffs claim acts as a surrogate ODS, in support of their argument that Coleman's needed such features to have a safe design. Coleman further claims that, factually, an ODS is irrelevant in this case because there is testimony that the lantern was still operating when the decedents were found so the tent was not an oxygen-depleted environment. Coleman asserts that the other heaters are not substantially similar to the Coleman heater and do not demonstrate an alternative design for the Coleman heater in question. Also, internet descriptions of ODS heaters should not be allowed because they contain hearsay and information regarding heaters available today which are not relevant to the issue of what was available in 1995 when the subject heater was manufactured.

Coleman's motion is DENIED. The evidence in question is relevant because it relates to Plaintiffs requirement to demonstrate a safer, alternative design. Evidence of successful use of safety features in other heaters is highly relevant to Plaintiffs' burden and to refute Coleman's defenses. These other heaters show the feasibility of the alternative safer design. The court stated several times in its September 12, 2012 Memorandum Decision and Order that these alternative designs were relevant. Even if there is a question of fact about the level of oxygen in the tent, such a question does not make the ODS design irrelevant.

**B. PLAINTIFFS' OBJECTIONS TO COLEMAN'S PRETRIAL DISCLOSURES**

Several of Plaintiffs' objections are resolved by the court's ruling on motions in limine. With respect to the remaining objections, the court rules as follows:

Coleman should notify Plaintiffs by November 30, 2012 if it intends to call only Marchica or

Deppa to avoid unnecessary preparation.

The court agrees that expert reports are not admitted as exhibits if the expert testifies.

If Coleman has the incident propane heater, it needs to make it available to Plaintiffs no later than November 30, 2012, and provide a chain of custody dating from the incident.

Copies of exhibits listed as "may be used" should be turned over to Plaintiffs no later than November 30, 2012.

## C.  COLEMAN'S OBJECTIONS TO PLAINTIFFS' PROPOSED WITNESS LIST

Coleman objects to the inclusion of Jordonna Leigh-Karriker, Dustin Keeney, and Gerald Ryan on Plaintiffs' witness list because Plaintiffs failed to disclose such witnesses in any discovery response or FRCP 26 disclosure.  However, these witnesses were disclosed in Plaintiffs' Third Amendments to Rule 26(a) Disclosures, prepared and sent on February 13, 2012.  Therefore, Coleman's objections are overruled.

## D.  COLEMAN'S OBJECTIONS TO PLAINTIFFS' AMENDED EXHIBIT LIST

Coleman objects to 93 of Plaintiff's 108 exhibits.  Many of these objections, sixty-seven, are the subject of Coleman's motions in limine and are resolved by the court's rulings on those motions.

Coleman objects to several photographs as vague and ambiguous because Plaintiff has failed to sufficiently describe what photographs they seek to admit.  However, Coleman is in possession of all the photographs and the description of photographs appears adequately specific to the court.  For example, Exhibit 28 is photographs of Engberg and Hutter testing on March 15, 2011, and Exhibit 29 is photographs of Powermate 5017 tested by Engberg on December 1, 1999.  Given that Coleman is already in possession of these photographs from discovery, these descriptions are sufficient.  Accordingly, these objections are overruled.  Moreover, the court is generally not needed to rule on objections regarding the sufficiency of an exhibit's description.  While a "vague and ambiguous" objections may be common place

in a discovery response, it is not typically a basis for a pre-trial ruling from the court. To the extent that Coleman genuinely did not know which document was being identified, an inquiry should have been made to Plaintiffs' counsel for better clarification before asking for a court ruling.

Coleman objects to many of the exhibits on the ground that they lack foundation. Plaintiffs respond that these documents have been admitted in several prior trials and Coleman knows that the foundation for the documents will be supplied by Plaintiffs' experts or Coleman's employees. The court finds no basis for concluding that the exhibits lack foundation. To the extent that Plaintiffs fail to lay a foundation at trial, Coleman can raise the objection at that time.

Many of Coleman's objections under FRE 401, 402, 403 appear to have no basis other than they do not support Coleman's positions. For example, the court fails to see how the draft of an appropriate heater warning prepared by Plaintiffs' human factors expert could be irrelevant, confuse the issues, a waste of time, or be more prejudicial than probative. In addition, Coleman can challenge the trustworthiness of alleged hearsay within business records through cross examination.

Plaintiff has responded to specific objections to specific exhibits on pages 5 through 8 of its Amended Response to Coleman's Objections to Plaintiffs' Amended Exhibit List. Based on those responses, the court finds no basis for sustaining objections to these exhibits prior to trial.

### E. OBJECTIONS TO DEPOSITION DESIGNATIONS

Both parties object to the deposition designations made by the opposing party. Some of Coleman's objections are to the entire designation of certain depositions based on its motions in limine. Plaintiffs also have several objections to Coleman's designated deposition testimony based on motions in limine. Those objections are therefore resolved by the court's rulings on the motions in limine.

In their motion, Coleman also objected to entire depositions based on the fact that certain witnesses will be available at trial. At the motion in limine hearing, however, Coleman withdrew those

objections. Despite that withdrawal, the parties still have a dispute with respect to these depositions. Plaintiffs assert that if the witness are going to be in attendance at trial, they have a right to have them as adverse witnesses in their case-in-chief. However, Coleman represents that the witnesses are former employees and that it cannot compel their attendance at that time. Plaintiffs, therefore, will read the witnesses deposition and be able to cross-examine the witnesses during Coleman's case.

With respect to the parties' specific objections to deposition testimony, the court has not been provided copies of the depositions in question. No exhibits were filed with either parties' objections. The court cannot rule on the admissibility of specific testimony without seeing such testimony. Therefore, the parties are directed to submit the depositions in question by noon on November 29, 2012, in order to obtain pre-trial rulings.

## CONCLUSION

Based on the above reasoning, Plaintiffs' Motion in Limine [Docket No. 151] is GRANTED IN PART AND DENIED IN PART as outlined for each issue above; Defendant's Motion in Limine to Exclude Evidence of Corporate Status, Foreign Citizenship, Ownership Structure, Wealth, Size, and Income [Docket No. 138] is GRANTED IN PART and DENIED IN PART; Defendant's Motion in Limine to Exclude Evidence of Other Coleman Heaters and Propane Products [Docket No. 142] is GRANTED IN PART and DENIED IN PART; Defendant's Motion in Limine to Exclude Evidence from the Consumer Product Safety Commission [Docket No. 144] is DENIED; Defendant's Motion in Limine to Exclude Other Incident Evidence [Docket No. 147] is DENIED; Defendant's Motion in Limine to Bar Inflammatory and Prejudicial Language at Trial and/or Personal Attacks on Defense Counsel [Docket No. 149] is GRANTED IN PART and DENIED IN PART; Defendant's Motion in Limine Regarding Plaintiffs' Spoliation of Evidence [Docket No. 153] is GRANTED IN PART and DENIED IN PART; Defendant's Motion in Limine to Bifurcate Trial [Docket No. 155] is DENIED; Defendant's Motion in

Limine for Rule 104 Hearing Regarding the Opinions of Hutter and Engberg in Light of Recent Tenth Circuit Decision in *Hoffman v. Ford* [Docket No. 157] is DENIED; Defendant's Motion in Limine to Exclude Evidence of Other Manufacturer's Heaters [Docket No. 159] is DENIED.

Plaintiffs' Objections to Coleman's Pretrial Disclosures, Coleman's Objections to Plaintiffs' Proposed Witness List, and Coleman's Objections to Plaintiffs' Amended Exhibit List are ruled on as outlined above. The court has also made preliminary rulings on the parties' objections to deposition designations. However, to make the remaining rulings on specific objections, the court instructs the parties to file copies of the depositions in question by noon on November 29, 2012, in order to obtain pre-trial rulings on such objections.

DATED this 28th day of November, 2012.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge